RIMM, J.T.C.
These matters[1] involve the application of the Manufactured Home Taxation Act, N.J.S.A. 54:4-1.2 et seq., L. 1983, c. 400, § 1 et seq., effective December 22, 1983, (the act) to certain improvements constructed at mobile home sites. The precise issue may be stated as follows: are improvements such as patios, garages, sheds, storage rooms, porches, New Jersey rooms[2] and carports, constructed in connection with a manufactured home and placed on the same site as the manufactured home, part of the manufactured home and exempt from local property taxation under the act or are they subject to such taxation as improvements under N.J.S.A. 54:4-23?
*548 Bayshore Woods, Inc. was the owner of a mobile home park located in defendant township. A master deed, submitting the mobile home park to the Condominium Act, N.J.S.A. 46:8B-1 et seq., was duly recorded in the office of the Clerk of Cape May County. The master deed created the Bayshore Woods condominium for seniors with 100 sites equipped for the installation of manufactured homes.[3]
For the tax year 1984, 40 separate suits were filed in the Tax Court seeking determinations of the taxability of the sites of the manufactured homes for local property tax purposes. One of the suits was brought by Bayshore Woods, Inc. and involves 61 sites. The other 39 suits were each brought by individual taxpayers.
The court first ruled that the land should be assessed as 100 individual line items based on the condominium master deed. Following that ruling, the parties agreed on the amount of the land assessment for each of the 100 units. Judgments were entered by the Clerk of the Tax Court for each of the 100 units on which there was no manufactured home nor any improvements of any kind whatsoever.
The court also ruled that the individual manufactured homes were exempt from local property taxation in accordance with the act. As a result of that ruling, other judgments were entered fixing the land assessment as agreed between the parties and imposing no assessment for improvements for each unit on which there was only a manufactured home but no other improvements of any kind whatsoever.
A third group of assessments remains before the court. These involve units with manufactured homes and, in addition to the manufactured home, certain improvements as described above. The facts relevant to the issue before the court in these *549 remaining cases are that in each case there is a manufactured home at the site in the mobile home park. In each instance there is on the site, either freestanding or attached to the manufactured home, one or more of the above described improvements. Some of the improvements were constructed off site and brought to the site while others were constructed on site. As a result of the court’s prior ruling, there will be no improvements assessment for the manufactured home. However, the court must determine whether these other improvements on the site are real property to be assessed under N.J.S.A. 54:4-23. If they are not to be assessed, judgments will be entered in the remaining matters for the land assessments only as to which amounts there has already been agreement. If these improvements are to be assessed, the parties have agreed on the amounts of the assessments for improvements, and judgments are to be entered assessing the land, in the agreed amounts, and assessing the improvements, in the agreed amounts, with no assessments for local property tax purposes to be imposed on the manufactured homes.
There is no dispute between the parties that the improvements are real property. If the improvements were part of a single-family residence assessed as such for local property tax purposes, they would similarly be assessed as real property for local property tax purposes. Plaintiffs contend however that, notwithstanding that the improvements are real property, they are encompassed within the exemption granted to a manufactured home under the act because the improvements are located on the same site as the manufactured home and should be similarly exempt from local property taxation. Plaintiffs all contend that the exemption from local property taxation afforded to the manufactured home under the act extends to these improvements. The municipality contends that, even though the manufactured homes are exempt from local property taxation, the improvements constitute real property and are taxable as such under N.J.S.A. 54:4-23.
The first step in the resolution of the issue before the court is an analysis of the act adopted in part as a legislative response *550 to the holding of Koester v. Hunterdon Cty. Tax Bd., 79 N.J. 381, 399 A.2d 656 (1979). In that case the Court ruled that manufactured homes intended for use as permanent dwellings were to be treated as real property for local property tax assessment purposes. The Legislature, however, exempted manufactured homes located in mobile home parks from local property taxation. In effect, the Legislature has defined such manufactured homes as personal property for local property tax purposes. In so defining manufactured homes, the Legislature has provided that only manufactured homes meeting the specific criteria of the statute are exempt from local property taxation. In addition, a manufactured home is only exempt from local property taxation if it is located in a mobile home park as also specifically defined in the statute.
The act does essentially three things. First, it defines a manufactured home. Secondly, it exempts manufactured homes in mobile home parks from local property taxation. Finally, in order to compensate a municipality for the loss of local property tax revenues by virtue of such exemption, it provides for manufactured home owners to pay to the municipality a municipal service fee.[4]
It is important to note that the Legislature incorporated its legislative findings and determinations in the statute and enacted them as part of the law. The Legislature found and determined that difficult questions had been raised in litigation over the tax status of manufactured homes, N.J.S.A. 54:4-1.3.a., and that “[manufactured homes located in mobile home parks receive fewer public services than” other manufactured homes or single-family dwelling units. N.J.S.A. 54:4-1.3.b. The Legislature also found and determined that the distinction between manufactured homes located in mobile home parks and other dwelling units must be drawn “in a fair and equitable manner, which will not penalize the owners of the manufactured homes *551 located in mobile home parks, nor absolve them of their responsibility to pay for the public services they receive.” N.J.S.A. 54:4-1.3.g.
A manufactured home is carefully and precisely defined in the act as a unit of housing which:
(1) Consists of one or more transportable sections which are substantially constructed off site and, if more than one section, are joined together on site;
(2) Is built on a permanent chassis;
(3) Is designed to be used, when connected to utilities, as a dwelling on a permanent or nonpermanent foundation; and
(4) Is manufactured in accordance with the standards promulgated for a manufactured home by the secretary pursuant to the “National Manufactured Housing Construction and Safety Standards Act of 1974,” Pub.L. 93-383 (42 U.S.C. § 5401 et seq.) and the standards promulgated for a manufactured or mobile home by the commissioner pursuant to the “State Uniform Construction Code Act,” P.1,. 1975, c. 217 (C. 52:27D-119 et seq.); .... [N.J.S.A. 54:4-1.4.d]
The act then provides that a manufactured home is “subject to taxation as real property under Chapter 4 of Title 54 of the Revised Statutes.”[5] N.J.S.A. 54:4-1.5.a. However, “[a] manufactured home which is installed in a mobile home park shall not be subject to taxation as real property.” N.J.S.A. 54:4-1.5.-b. A mobile home park is also defined in the statute. N.J.S.A. 54:4-1.4.e.
In place of the taxation as real property which would otherwise be imposed on a manufactured home installed in a mobile home park except for its provisions, the act establishes a municipal service fee for such a manufactured home, provides for imposition of the fee by municipal ordinance and prescribes the method of calculating the fee and collecting it. N.J.S.A. 54:4-1.6.
Plaintiffs ask this court to expand the definition of a manufactured home given by the Legislature to include improvements placed on a mobile home site other than the manufactured home itself. The argument made by plaintiffs is that the act establishes a method for insuring, to the municipality, revenue to provide essential services to the unit owners in a *552 mobile home park where there are located manufactured homes as defined in the act. The revenue is to be provided in this manner because fewer services are provided to such homeowners than are provided to other property owners. Since the revenue is provided to the municipality as a result of the fees to be paid in accordance with the act, there is no reason to impose additional taxes. The fee provided for in the act should, according to plaintiffs, supplant all local property taxes in a mobile home park relating to the improvements on a manufactured home site. Plaintiffs argue that the problem which the Legislature sought to address is only solved by also exempting improvements at a mobile home site other than the manufactured home because, otherwise, the manufactured home owner would not get the relief the Legislature intended.
The countervailing argument is that exemptions from the payment of local property taxes are to be strictly construed. N.J.S.A. 54:4-1 provides as follows:
All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter____ [emphasis supplied]
The act provides that manufactured homes are in fact subject to taxation as real property with the following exception:
A manufactured home which is installed in a mobile home park shall not be subject to taxation as real property. [N.J.S.A. 54:4-1.5.b.]
The general rule of interpretation of tax exemptions is that they are to be strictly construed against the claimant. An exemption from taxation is a departure from the principle that everyone should bear his just and equal share of the public tax burden. Taxation is the rule; exemption is the exception to the rule. A legislative design to release one from his fair share of the burden must be expressed in clear and unequivocal terms, and ambiguities are resolved against allowing an exemption. National Missions Bd. v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952); Bloomfield v. Academy of Medicine, 87 N.J. Super. 595, 210 A.2d 420 (App.Div.1965), rev’d on other grounds 47 N.J. 358, 221 A.2d 15 (1966); Phelps Dodge Industries, Inc. v. Taxation Div. Director, 8 N.J. Tax 354 (Tax Ct. 1986); Grace *553 and Peace Fellowship Church, Inc. v. Cranford Tp., 4 N.J Tax 391, 396-397 (Tax Ct.1982); Summit City v. Overlook Hospital Association, 4 N.J. Tax 183, 190-191 (Tax Ct.1982). It must be noted, however, that strict construction does not require a rigid interpretation that does not serve the apparent legislative purpose; rather, a statute is to receive a reasonable construction. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956). This principle of reasonableness, however, does not negate a construction favoring the taxation of property. “One who claims exemption from a tax must bring himself clearly within the exemption provision.” Container Ring Co. v. Taxation Div. Director, 1 N.J.Tax 203, 208 (Tax Ct.1980) aff'd o.b. 4 N.J.Tax 527 (App.Div.1981) certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). Furthermore, it is beyond the power of a court to construe or implement a law beyond the clear, unambiguous language of the statute. Alling Street Urban Renewal Co. v. Newark, 204 N.J.Super. 185, 189, 497 A.2d 1287 (App.Div.1985); MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), aff’d o.b. 89 N.J 216, 445 A.2d 397 (1982); Toys “R” Us, Inc. v. Taxation Div. Director, 8 N.J. Tax 51, 62-63 (Tax Ct.1985); L.B.D. Construction, Inc. v. Taxation Div. Director, 8 N.J. Tax 338 (Tax Ct.1986).
In the present case the court is dealing with a clear and unambiguous statute crafted by the Legislature in response to a specific problem it perceived as a result of judicial decisions. Koester was the last in a line of cases dealing with various issues relating to the taxation of manufactured homes. Nelson Cooney & Son, Inc. v. S. Harrison Tp., 57 N.J. 384, 273 A.2d 33 (1971); Bell v. Corbin City, 164 N.J.Super. 21, 395 A.2d 546 (App.Div.1978); Manhattan Trailer Ct. v. N. Bergen Tp., 104 N.J.Super. 405, 250 A.2d 156 (App.Div.l969).[6] In Koester, all *554 of the subject homes, constructed and sold by the park owner, were improved with wood porches, large-size decks and two-car paved parking. The main issue on appeal before the Court was decided in favor of the municipality on March 20, 1979, thereby permitting it to tax the individual units to their respective title holders in toto under N.J.S.A. 54:4-1 et seq. 79 N.J. at 388, 390-392, 399 A.2d 656. The Court went on to suggest that prompt legislative consideration would be appropriate in light of its holding with respect to a number of issues, including the existence of license fees as imposed by municipal ordinance and the Court’s confirmation of a municipality’s power to tax the subject properties as real estate. Id. at 394.
In response to Koester, the Legislature first imposed a moratorium on the assessment and taxation of mobile homes as real property as of March 20, 1979 for a one-year period.[7] The moratorium was extended by amendment several times. The last extension in L. 1982, c. 204, expired on December 31, 1983. The effective date of the act was December 22, 1983.
At the time Koester was decided the Mobile Home Study Commission had already completed the first two years of its work. Created and extended by joint resolutions in 1977 and 1979 to consider, inter alia, the tax implications attendant to the acquisition and ownership of manufactured homes, the commission released its final report in October 1980. Its recommendation, accompanied by the submission of draft legislation incorporating the suggestions offered, unequivocally supported taxation of manufactured homes located in mobile home parks including, by way of its proposed definition of manufactured homes, “any attachments thereto or appurtenant structures belonging to the owner of the mobile home.” Report and *555 Recommendations of the Mobile Home Study Commission, Appendix C at c-vi (October 1980).
It was therefore the recommendation of the Mobile Home Study Commission that both the mobile or manufactured home itself and all appurtenant structures belonging to the owner of the manufactured home, in their entirety, be subject to local property taxation.
In 1982 the Mobile Home Taxation Commission was created pursuant to L. 1982, c. 204, §3 et seq.[8] The commission was charged with the task of reviewing the State’s taxation and land use systems to assist in the development of an equitable approach to the taxation of mobile homes, inter alia. The commission ultimately recommended “[t]hat manufactured homes located in mobile home parks not be subject to taxation as real property, but be subject to a mandatory municipal service fee in place of such taxation ... [with such] fee [to] be related to services actually rendered homeowners in those parks and not paid for through taxation.” Final Report of the Mobile Home Taxation Commission, 18-19, subpar. (b) (June 1983). There is, in this report of the Mobile Home Taxation Commission, no definition of mobile or manufactured homes, but the report does specifically refer to the Mobile Home Study Commission report. If it was the intention of the Mobile Home Taxation Commission that manufactured homes should be defined to include “attachments thereto and appurtenant structures,” the Legislature did not use such a definition.
The legislative response to the problem was to provide that manufactured homes located in mobile parks are exempt from local property taxation. The statute does not say that manufactured homes, together with their accessory improvements, are exempt from local property taxation. Nor is there any merit to the argument that the intent of the Legislature was not clearly *556 expressed and should be ascertained by the court from the overall act. On the contrary, the Koester case dealt with mobile homes which had additional or accessory improvements. Yet, in responding to the perceived problem created by the judicial determination in Koester, the Legislature opted to enact a statute with a carefully worded definition limiting the exemption to manufactured homes as defined in the act. The Legislature specifically chose not to include such additional or accessory improvements with the actual manufactured home as exempt from local real property taxation. It would have been a simple matter for the Legislature to have broadened the definition of exempt property to include accessory improvements attached to and/or forming a part of the home site on which a manufactured home in a mobile park is located, particularly in view of the facts in Koester. In addition, the limited legislative response is noteworthy because the Koester opinion dealt at length with the reasons for classifying manufactured homes as real property under N.J.S.A. 54:4-23 and noted that such manufactured homes have been legislatively classified as real property in other states.
Comparison of the taxation commission recommendations and the act reveals that the Legislature considered and adopted to a substantia! degree the taxation commission’s recommendations on the issues raised. The legislation ultimately adopted as the act contains findings of fact virtually identical to those findings made by the Mobile Home Taxation Commission in its final report. It is therefore reasonable to assume that the Legislature in ultimately promulgating the act had before it both the taxation commission report and the Mobile Home Study Commission report. Yet, the Legislature enacted a definition of a manufactured home which does not in any way refer to “attachments thereto or appurtenant structures belonging to the owner of the mobile home” which is part of the definition of a mobile home in the Mobile Home Study Commission report. Under the circumstances, it may reasonably be concluded that the Legislature intended to limit the exemption to only the manufactured home as “manufactured home” is specifically *557 defined in the act. The Legislature rejected the more expansive definition of a manufactured home in favor of a carefully worded definition, precisely limiting the exemption from local property taxation to a manufactured home itself and not to any attachments or appurtenances.
A further problem to be considered is the nature of the municipal service fee provided for in N.J.S.A. 54:4-1.6. The fee is based on “the costs of services provided, or paid for, by the municipality, or provided by any other appropriate taxing authority, for lessees of sites in the park.” N.J.S.A. 54:4-1.6.a. The mandate to the municipality is based on N.J.S.A. 54:4-1.3.-b., part of the legislative findings and determinations, which says:
Manufactured homes located in mobile home parks receive fewer public services than manufactured homes or other single family dwelling units located on privately owned lots, and thus the former homes occasion a lower level of public expenditures than the latter homes----
The theory apparently is that home sites in mobile home parks receive fewer municipal services than other home sites. For example, street repair and trash removal are handled differently inside a mobile home park from the way they are handled in the rest of a municipality. Hence, the Legislature directed the use of a revenue raising method based on cost of services instead of using real property values as a measure of a property owner’s required contribution towards the cost of municipal services. The concept overlooks the burden on the municipality, for example, in supplying police and fire services, which services are “paid for through taxation.” Cf. Final Report of the Mobile Home Taxation Commission, supra. Even assuming, as the Legislature has, that manufactured homes of different costs, values and sizes should contribute the same amount to the cost of municipal services, there is no reason why improvements other than the manufactured home itself should not contribute their fair share of the cost of municipal services, schools and county services, based on value in the same manner that other real estate improvements in the municipality contribute their fair share of the cost of such services.
*558 It is precisely the proposition that each taxpayer should bear his or her fair share of the tax burden which brings into play the concept that exemptions from local property taxation are to be strictly construed against an applicant for such exemption.[9] Historically this requirement combines with the economics of municipal taxation to form the policy behind the strict construction rule.
Traditionally the property tax has been the chief source of revenue of local governments. Recent times have witnessed efforts on the part of state legislatures to relieve somewhat the almost exclusive dependence upon that single source of revenue. But even in those jurisdictions, property taxation still represents the mainstay of local government. Recent years have witnessed also a steadily increasing taking of private property by both state 'and federal governments and various agencies thereof for public purposes, thus removing it from the tax rolls and casting a proportionately greater share of support of state and local government upon the private property owner. [Moonachie v. Port of N.Y. Auth., 38 N.J. 414, 423, 185 A.2d 207 (1962)]
As indicated, the municipal solicitor has in effect requested the court to write an ordinance for the municipality implementing the directive in the act that a municipal service fee be imposed on manufactured homeowners located in mobile home parks. There is no issue before the court involving the wording of the ordinance or the manner in which the fee should be implemented, and the court respectfully declines to accede to the solicitor’s request. However, without deciding the issue, it would appear that the revenue raised by imposing local property taxes in these matters is not the same as the tax revenue referred to in N.J.S.A. 54:4-1.6.a. which is to be credited against the cost of services supplied to mobile park homeowners in calculating the municipal service fee. In the court’s view the tax revenues raised by taxing the improvements in the present cases are for municipal services generally, e.g., police and fire protection services afforded to all residents including mobile park homeowners, for schools and for county services.
For the tax year 1984 judgments are entered imposing on each home site a land assessment, as to which the amounts *559 have been stipulated by the parties, and an assessment for improvements other than the manufactured home itself, as to which the amounts have also been stipulated.

 There are a total of 33 cases presently before the court involving the same issue.

 Glass-enclosed porch-type rooms sometimes erroneously called "Florida rooms."

 By letter dated June 4, 1984, the Attorney General of New Jersey advised the Cape May County Board of Taxation that it was his opinion that manufactured homes owned under a condominium arrangement in accordance with N.J.S.A. 46:8B-1 et seq. may qualify as a mobile home park under the act. The court agrees with that opinion.

 Defendant’s solicitor has asked the court to address the provisions of its municipal service fee ordinance. The ordinance is not, however, in issue.

 N.J.S.A. 54:4-23.

 Cf. Bayonne City v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979), decided on the same day as Koester. There the Court held that, in view of the legislative intent to create a fiscal climate which would attract industry into *554 New Jersey, movable machinery and equipment used in business was not subject to taxation as real property.

 N.J.S.A. 54:4C-1 et seq. [repealed]; the recommendation to impose a moratorium was made by the Mobile Home Study Commission.

 This enactment also extended the taxation moratorium, and, by footnote, it referred to N.J.S.A. 54:4C-1 repealed by L. 1981, c. 9, § 3, effective January 26, 1981.

 There is no issue before the court on the constitutionality of the act, and the court will not deal with any such issue.